IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHRISTOPHER M. GERKEN,           )   Civ. No. 21-00082 HG-WRP
                                 )
                Plaintiff,       )
                                 )
        vs.                      )
                                 )
KILOLO KIJAKAZI, Acting          )
Commissioner of Social           )
Security,                        )
                                 )
                Defendant.       )
                                 )
_____)

**ORDER AFFIRMING THE DECISION OF THE
SOCIAL SECURITY ADMINISTRATION COMMISSIONER**

This case involves the appeal of the Social Security Administration Commissioner's decision to deny Plaintiff Christopher M. Gerken's application for Disability Insurance Benefits.

On June 28, 2018, Plaintiff filed an application for Disability Insurance Benefits, claiming he was disabled as of February 21, 2018.  Plaintiff's application was principally based on impairments related to his neck and lower back.

The Social Security Administration denied Plaintiff's initial application and his request for reconsideration. Following an administrative hearing, the Administrative Law Judge ("ALJ") held that Plaintiff was not disabled from February 21, 2018 to July 27, 2020, the date of the ALJ's written decision.

The Social Security Administration Appeals Council denied Plaintiff's request for further review, rendering the ALJ's

decision the final administrative decision of the Social Security Commissioner.

The Court **AFFIRMS** the decision of Social Security Administration Commissioner to deny Plaintiff's application.

## PROCEDURAL HISTORY

On June 28, 2018, Plaintiff Christopher M. Gerken applied for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record [hereinafter "AR"] at p. 55-66, ECF No. 11).

On February 13, 2019, the Social Security Administration denied Plaintiff's application.  (Id.)

On March 30, 2019, Plaintiff sought reconsideration of the Social Security Administration's initial decision.  (Id. at pp. 81, 88).

On May 22, 2019, the Social Security denied Plaintiff's application upon reconsideration.  (Id. at pp. 67-81).

On July 28, 2019, Plaintiff requested a hearing before an ALJ.  (Id. at pp. 93-94).

On July 20, 2020, the ALJ held a hearing on Plaintiff's application.  (Id. at pp. 31-54).  The hearing was held via telephone due to the COVID-19 pandemic.  Plaintiff appeared by phone and testified at the hearing.

On July 27, 2020, the ALJ issued a written decision denying

2

Plaintiff's application.   (<u>Id.</u> at pp. 15-26).

On December 7, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for further review of the ALJ's decision.   (<u>Id.</u> at p. 1).   The ALJ's decision became the final administrative decision of the Social Security Administration Commissioner after Plaintiff was denied further review.

On February 9, 2021, Plaintiff filed a Complaint seeking judicial review of the Social Security Administration Commissioner's denial of his application.   (ECF No. 1).

On August 13, 2021, Defendant filed the Administrative Record.   (ECF No. 11).

On October 12, 2021, Plaintiff filed PLAINTIFF'S OPENING BRIEF.   (ECF No. 13).

On January 25, 2022, Defendant filed DEFENDANT'S ANSWERING BRIEF.   (ECF No. 17).

On February 5, 2022, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 18).

On March 14, 2022, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.   (ECF No. 20).

<u>**BACKGROUND**</u>

Plaintiff is a sixty-year-old man.   (AR at p. 66, ECF No. 11).   He is college educated, having graduated with a Bachelor of

3

Science in horticulture.  (Id. at pp. 48, 172).

Plaintiff claims an onset date of disability on February 21, 2018.

## I.  Plaintiff's Work History

From May 1993 to September 2016, Plaintiff was employed by the State of Hawaii as an Environmental Health Inspector.[1]  (Id. at p. 36).  Plaintiff was responsible for enforcing federal and state pesticide laws.  Plaintiff's job required that he conduct inspections two to three times a week on various properties around Hawaii.  (Id. at pp. 36, 47, 58).

On September 16, 2016, Plaintiff resigned from his position as an Environmental Health Inspector.  (Id. at p. 64).  Plaintiff did not leave his job as a result of disability.  Plaintiff left to move to California to care for his elderly mother.  (Id. at pp. 36-37).

Plaintiff began working for his brother after he moved to California in 2016.  (Id. at pp. 38, 254).  Plaintiff testified that he stopped working for his brother in February 2018, claiming that he injured himself.  (Id. at p. 38).

Plaintiff returned to Hawaii in October 2018.  (Id. at p. 37).

_____

[1] Plaintiff's job is referred to by various titles throughout the record.  This Order uses the title as it appears in Plaintiff's briefs.  (See, e.g., Pl.'s Mot. at p. 1, ECF No. 13).

## II.  Plaintiff's Medical History

Plaintiff's application for Disability Insurance Benefits is based primarily on impairments to his lower back (lumbar spine) and neck (cervical spine).  (See, e.g., id. at p. 41).  In addition to Plaintiff's lumbar and cervical spine problems, the ALB found that Plaintiff also had severe impairments relating to his shoulders, left knee, and left pectoralis.  (Id. at p. 17).  Plaintiff has other impairments classified as non-severe.  (Id. at pp. 17-18).

Lumbar Spine Impairment: On February 22, 2018, Plaintiff visited the emergency room for lower back pain that radiated down his left leg.  (Id. at pp. 297-98).  He reportedly injured himself by falling out of a chair.  (Id. at pp. 40, 297-98).

Medical records show "mild to moderate disc degeneration throughout [Plaintiff's] lumbar spine" with moderate narrowing of the spinal canal.  (Id. at pp. 273-74, 299).  MRI and x-ray imaging taken after the fall demonstrated disc bulging at two levels, and a stress fracture.  (Id.)

Plaintiff's medical records from February 2018 through January 2020 reflect complaints of lower back pain, numbness, or pain in his left extremity.  (See, e.g., id. at pp. 311, 335).  Physical exams generally noted lumbar spine tenderness, full range of motion, full strength, normal muscular bulk, and intact

sensation with the exception of occasional numbness in his left extremity. (Id. at pp. 440, 442, 452-53, 456, 465, 509-11). Plaintiff also exhibited normal gait (id. at pp. 452-53, 456), although two exams found unsteady or mildly abnormal gait (id. at pp. 371, 510).

Medical opinions differed as to Plaintiff's candidacy for lower back surgery. (Compare id. at p. 466 with pp. 509-11). Plaintiff told his surgeon that he preferred to pursue conservative treatment options before surgery. (Id. at pp. 510, 513). There is no evidence that Plaintiff underwent surgery despite testimony that surgery was planned.

Treatment records from 2018, 2019, and 2020 show that Plaintiff's lower back condition was treated successfully through physical therapy. (Id. at pp. 331, 371, 376-80, 442, 452-53, 666-68). Plaintiff was also treated with pain medication and an epidural steroid injection. (Id. at pp. 256, 300, 367-69, 456).

Cervical Spine Impairment: Plaintiff's cervical spine impairment presented itself in April 2018. (Id. at pp. 295-97). Plaintiff was found to have mild degenerative disc disease of the cervical spine with disc bulging and nerve compression. (Id. at pp. 319, 466).

Plaintiff's cervical spine impairment presented itself on or about April 13, 2018. Plaintiff visited the emergency room with a complaint of acute pain radiating from his left shoulder, arm,

chest, and up into his neck.  (<u>Id.</u> at pp. 295-97).  Plaintiff was prescribed pain medication which provided some relief.  (<u>Id.</u>)

On July 5, 2018, Plaintiff was evaluated for his neck impairment.  (<u>Id.</u> at pp. 233-35).  Plaintiff was found to have a normal range of motion in his upper extremities, no cervical spine tenderness, and diminished sensation in his left arm.  (<u>Id.</u> at p. 235).  Plaintiff rated his neck pain at one out of ten. (<u>Id.</u>)  Plaintiff underwent physical therapy and "respond[ed] well . . . with decrease of neck pain and improvement in cervical mobility."  (<u>Id.</u> at p. 404).

<u>Left Pectoralis Injury:</u> Records show that Plaintiff injured his left pectoral muscle in April 2018, contemporaneous with the onset of his neck impairment.  (<u>Id.</u> at p. 466)  Plaintiff was encouraged to address muscle atrophy with physical therapy.

<u>History of Bilateral Shoulder & Knee Impairments:</u>  Plaintiff has a remote history of surgical procedures, with a shoulder arthroscopy in 2005 and knee surgery in 2001.  (<u>Id.</u> at pp. 247, 289, 544, 645).  Plaintiff complained of residual pain, but there is no record of significant limitation or appreciable treatment in these areas during the relevant period.  (<u>Id.</u> at p. 22).

<u>Non-Severe Impairments:</u>  Plaintiff was diagnosed with hypertension, hyperlipidemia, obesity, and a right inguinal hernia repair in 1987.  (<u>See id.</u> at pp. 247, 257, 543).  The record does not reflect that such impairments pose any

significant limitation to Plaintiff's ability to work.  The ALJ
found such limitations to be non-severe.  (Id. at p. 18).

Plaintiff also alleged mental impairments such as inability
to concentrate, sleep disturbance, and inability to complete
tasks.  (Id. at pp. 17-18).  The ALJ found such impairments were
not medically determinable and not severe.  Plaintiff does not
challenge this determination on appeal.

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he
or she is unable to "engage in any substantial gainful activity
by reason of any medically determinable physical or mental
impairment which ... has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart,
400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be
affirmed by the District Court if it is (1) based on proper legal
standards and (2) the findings are supported by substantial
evidence on the record as a whole.  See 42 U.S.C. § 405(g);
Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The party claiming error carries the burden to demonstrate
not only the error, but also that the error "affected his
'substantial rights,' which is to say, not merely his procedural

rights." <u>Ludwig v. Astrue</u>, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing <u>Shinseki v. Sanders</u>, 556 U.S. 396, 407-09 (2009).  The District Court must uphold a decision based on legal error if that error is harmless.  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015).

**<u>ANALYSIS</u>**

## I.   **Applicable Law**

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits pursuant to the Social Security Act, 42 U.S.C. § 423.  The Commissioner of the Social Security Administration evaluates a disability claim using the following five-step sequential analysis:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when

considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

A claimant alleging disability has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## II.  The ALJ Applied the Five-Step Evaluation

The ALJ evaluated Plaintiff's disability claim using the five-step analysis.

At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability on February 21, 2018.  (AR at p. 17, ECF No. 11).

At step two, the ALJ concluded Plaintiff had the following severe impairments that significantly limit his ability to work: degenerative disc disease of the lumbar spine with disc bulges at L3/L4, spinal stenosis, and disc fragments at L5; degenerative disc disease of the cervical spine with moderate neuroforaminal narrowing; history of bilateral shoulder arthroscopies; history of left knee arthroscopies; and left pectoralis injury.  (Id.)

10

The ALJ determined that Plaintiff's other physical impairments -- hypertension, hyperlipidemia, hernia history, and obesity -- were not severe.  (<u>Id.</u> at pp. 17-18).

The ALJ also concluded that Plaintiff's allegations of mental impairment, including inability to concentrate, sleep disturbance, and issues completing tasks, were not medically determinable and therefore not severe.  (<u>Id.</u>)

<u>At step three</u>, the ALJ concluded that Plaintiff's impairments did not meet or equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at p. 19, ECF No. 11).

<u>At step four</u>, after having considered the entire record, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), subject to the following limitations:

> [Plaintiff] can lift, carry, push or pull twenty pounds occasionally and ten pounds frequently.  He can stand/walk for six hours out of eight and sit for six out of eight hours.  He can occasionally perform the postural activities, occasionally climb stairs and ramps, and occasionally climb ladders, ropes, or scaffolds.  He can frequently use the left non-dominant hand for handling and fingering.  He can occasionally use foot controls with the left foot.  He can occasionally perform above shoulder work with the left non-dominant arm.  He can occasionally perform overhead work bilaterally.

(AR at p. 19, ECF No. 11).

<u>At step five</u>, the ALJ found that the Plaintiff was capable

of performing past relevant work as a pesticide control inspector.  The ALJ determined that such past relevant work would not require Plaintiff to perform activities outside the scope of his residual functional capacity.  (Id. at p. 25).

The Parties do not dispute the ALJ's conclusions as to the first three steps of the evaluation.

## III. **The ALJ Properly Denied Plaintiff's Application**

This appeal from the decision of the Social Security Administration Commissioner centers on the ALJ's findings with respect to Plaintiff's residual functional capacity.

The ALJ concluded that the Plaintiff had the residual functional capacity to perform light work, subject to various limitations.  (Id. at p. 19).  The ALJ reached this conclusion after considering the entire record, including the objective medical evidence and Plaintiff's own testimony regarding his impairments.

The record contains a chronology of events relevant to the ALJ's decision to deny Plaintiff's application:

On September 16, 2016, Plaintiff resigned from his career as an Environmental Health Inspector for reasons unrelated to his application for disability benefits.  (Id. at p. 64).  Plaintiff left his job to move to California to care for his elderly mother.  (Id. at pp. 36-37).  Approximately one and a half years

after leaving his job, in February of 2018, Plaintiff allegedly injured his lower back falling out of a chair. (Id. at pp. 40, 297-98). Two months later, in April 2018, Plaintiff is alleged to have injured his neck and left pectoralis. (Id. at pp. 295-97). On June 28, 2018, Plaintiff first filed an application for Disability Insurance Benefits. (Id. at pp. 55-66). In October 2018, Plaintiff voluntarily returned to Hawaii from California. (Id. at p. 37).

Plaintiff testified that beginning in early 2018 he experienced debilitating pain and extreme functional limitations. Yet Plaintiff's physical limitations were generally found to be mild or moderate upon examination. (Id. at p. 23). Plaintiff was repeatedly found to have full range of motion in his extremities, full strength, intact sensation, and normal gait. (Id.) Plaintiff responded positively to conservative treatment such as physical therapy. (Id. at pp. 331, 371, 376-80, 442, 452-53, 666-68). Plaintiff's records also reflect that he engaged in physical activities such as surfing, fishing, and hiking during the relevant time period. (Id. at pp. 233, 289, 352, 668).

The ALJ considered this chronology and all other evidence in the record in deciding to deny Plaintiff's application. The ALJ considered all of the evidence, including the hearing testimony, and the ALJ determined that Plaintiff's testimony was not

credible regarding the severity of his symptoms.  The ALJ
explained that Plaintiff's testimony regarding the extent of his
physical limitations was inconsistent with the overall evidence
in the record.

Plaintiff argues that the ALJ committed legal error by
failing to provide specific, clear, and convincing reasons for
his decision not to credit all of Plaintiff's testimony.  The
record before the Court does not support Plaintiff's argument.
The ALJ's decision is free of legal error and is supported by
substantial evidence.

## A.    The ALJ's Credibility Determination

A claimant's testimony regarding the pain and severity of
symptoms is not conclusive evidence of disability.  42 U.S.C. §
423(d)(5)(A); 20 C.F.R. § 404.1529(a).  Testimony as to a
claimant's symptoms must be taken into consideration unless the
ALJ makes a determination to disregard such testimony.  Lewis v.
Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

It is the sole responsibility of the ALJ, not the District
Court, to "determine credibility, resolve conflicts in the
testimony, and resolve ambiguities in the record."  Treichler v.
Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).
The ALJ is not required to believe every allegation of disabling
pain or functional limitation.  Fair v. Bowen, 885 F.2d 597, 603

14

(9th Cir. 1989).

A claimant must provide objective medical evidence of underlying impairments that could reasonably produce the pain or symptoms alleged.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  If the claimant has produced such objective medical evidence, and is not found to be malingering, the ALJ may reject the claimant's testimony as to the severity of their pain or symptoms by providing "specific, clear, and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (explaining that "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").

Here, Plaintiff's principal allegation concerned chronic lower back pain resulting in debilitation, weakness, and limitations with mobility.  (Id. at p. 20).  Plaintiff claims he injured his lower back in February 2018 and experienced constant pain and weakness since.  (Id.)  Plaintiff also alleged chronic neck pain and a pectoral injury limiting his exertional and postural abilities.  (Id.)  Plaintiff claimed extreme functional limitations including the alleged inability to lift or carry more than approximately five pounds; the alleged inability to stand or walk for more than approximately fifteen to twenty minutes at one

time; the alleged inability to sit for more than thirty minutes at one time; and the alleged inability to perform certain previous daily activities such as surfing or extensive house or yard work. (Id.)

The ALJ found that Plaintiff produced objective medical evidence of his underlying severe impairments that could reasonably produce the alleged symptoms. (Id. at p. 20). The ALJ did not find Plaintiff's symptoms to be malingering. Upon review of the entire record, including the objective medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff's statements regarding the "intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id.)

The ALJ did not discredit all of Plaintiff's testimony regarding his physical limitations. The ALJ's comprehensive review of the record found evidence consistent with Plaintiff's allegations of pain, and certain mild limitations in terms of range of motion, tenderness, and gait. (Id. at pp. 20-22). Although some aspects of Plaintiff's testimony were consistent with the record, the ALJ found that the evidence did not support the full extent of Plaintiff's claims of functional limitation.

The ALJ presented three reasons for discrediting portions of Plaintiff's testimony: First, Plaintiff's claims of extreme

functional limitations were inconsistent with the objective medical evidence.  Second, the record reflected that Plaintiff found some relief through conservative treatment and did not pursue more aggressive treatment.  Third, documented reports of Plaintiff engaging in daily activities were inconsistent with the alleged limitations.  (Id. at p. 23).

The three reasons set forth by the ALJ provide a sufficient basis to discredit portions of Plaintiff's symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

**B.    The ALJ Properly Discredited Plaintiff's Testimony About The Severity Of His Symptoms**

**1.    Medical Evidence**

An ALJ may consider objective medical evidence in his analysis of a claimant's testimony.  Burch, 400 F.3d at 680-81.

The ALJ considered objective medical evidence regarding each of Plaintiff's limitations in his evaluation of Plaintiff's testimony.  (AR at pp. 20-23, ECF No. 11).

Plaintiff testified that he could lift and carry no more than five pounds, walk for no more than fifteen or twenty minutes at a time, and sit for no more than thirty minutes at a time. The ALJ found that these allegations were "somewhat out of proportion to objective medical evidence documented during

17

physical examinations." (Id. at p. 22).

The ALJ summarized the pieces of objective evidence that were inconsistent with Plaintiff's claims. Records from medical examinations throughout the relevant time period show that Plaintiff generally appeared "comfortable and not in apparent distress." (Id. at pp. 22, 293, 385, 413, 440, 510). Medical records reflect that Plaintiff had intact muscle tone and sensation in his extremities. (Id.) Plaintiff was occasionally found to exhibit intact range of motion in his back. (Id. at p. 301). Records also show that Plaintiff had "normal neurological functioning" and "intact motor strength in all four extremities with a normal unassisted gait." (Id. at pp. 22, 23, 293, 346, 385, 413-14, 440, 465-66). The ALJ noted that Plaintiff denied having a disturbed gait or was found to have no gait issues during examinations. (Id. at pp. 23, 234, 353, 456-57, 543, 564). Plaintiff did not utilize an assisted walking device. (Id.)

The record does support Plaintiff as having some functional limitation, but those limitations are frequently documented as being mild or occasional as opposed to extreme and constant. (Id. at p. 23). During consultations in 2019 and 2020, Plaintiff was found to have "mildly" reduced range of motion in his cervical spine, and he demonstrated only "mildly" positive results in straight leg raising tests on his left leg. (Id.)

18

Plaintiff similarly exhibited "mildly" antalgic gait in January 2020.  (Id. at pp. 22, 510).

The ALJ properly weighed the inconsistencies between Plaintiff's testimony and objective medical evidence in his decision to discredit Plaintiff's testimony as to the severity of his symptoms.  See, e.g., Garza v. Astrue, 380 F. App'x 672, 674 (9th Cir. 2010).  The ALJ's findings with regard to the objective medical evidence were sufficiently specific, clear, and convincing to discredit Plaintiff's testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff argues that the ALJ's credibility determination is insufficient because it is based wholly on lack of objective medical evidence to support the symptom allegations.  (Pl.'s Mot. at pp. 20-24, ECF No. 13).  Plaintiff's argument is unavailing. The ALJ properly relied on objective medical evidence in addition to other evidence in the record.  In rejecting Plaintiff's claims of extreme limitations, the ALJ also considered evidence that: (1) Plaintiff's condition improved with conservative treatment and (2) Plaintiff engaged in activities inconsistent with his claims of extreme limitation.

### 2.   Treatment Decisions

An ALJ may consider a claimant's course of treatment as a basis on which to discredit symptom testimony.  Parra, 481 F.3d

at 751.

The ALJ considered the record with respect to Plaintiff's treatments for his various impairments and found that conservative treatment improved Plaintiff's condition during the relevant time period.

First, the ALJ examined the record regarding Plaintiff's candidacy for surgery on his lumbar spine.  Plaintiff testified that he was planning to undergo surgery on his lower back.  (AR at p. 39, ECF No. 11).  Despite Plaintiff's claim, the ALJ confirmed that the record contains "no reference to the [Plaintiff] actually going through with surgery."  (Id. at p. 23).  Instead, as the ALJ noted, Plaintiff's medical records reflect conflicting opinions regarding Plaintiff's candidacy for surgery.  (Id.)  One doctor found Plaintiff to be a good surgical candidate; another doctor did not.  (Id. at pp. 466, 510).  Plaintiff reportedly equivocated as to whether he would pursue surgery, preferring a conservative treatment plan.  (Id. at pp. 510, 513).

Second, the ALJ examined the voluminous record with respect to Plaintiff's treatment for physical therapy.  The record reflects that Plaintiff treated his lumbar and cervical spine impairments with numerous rounds of physical therapy.  The ALJ explained that Plaintiff's "recent physical therapy notes ... document appreciable symptom improvement" such that Plaintiff

20

"specifically denied having lower back pain on a consistent basis." (Id. at pp. 22, 23, 666).

Third, the ALJ also examined the record with respect to Plaintiff's mobility issues.  Plaintiff alleged he could stand and walk for no more than fifteen minutes.  Yet, as the ALJ noted, the record contains "[n]o reference to the claimant using or needing to use an ambulatory assistive device."  (Id. at p. 23).

Finally, the ALJ noted that Plaintiff was treated with prescription pain medication and an epidural steroid injection. (Id. at p. 21).

The ALJ correctly took into account Plaintiff's course of treatment in his decision to discredit Plaintiff's testimony regarding the severity of his limitations.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (explaining that evidence of conservative treatment may be considered in credibility determination).  The ALJ's findings with regard to Plaintiff's treatment were sufficiently specific, clear, and convincing to serve as a basis on which to discredit Plaintiff's testimony. Id.

Plaintiff argues that the ALJ made no findings regarding Plaintiff's conservative treatment.  (Pl.'s Reply at p. 12, ECF No. 18).  The ALJ did not specifically use the term "conservative treatment," but it is readily discernible from the written

21

opinion that the ALJ took the above-enumerated issues into
consideration.  The Social Security Administration need not use
particular jargon as long as the ALJ's written decision has "set
forth the reasoning behind its decisions in a way that allows for
meaningful review."  Brown-Hunter, 806 F.3d at 492 (quoting
Treichler, 775 F.3d at 1099).

### 3.   Daily Activities

An ALJ may properly consider inconsistencies between symptom
allegations and daily activities as a reason to discredit symptom
testimony.  Tommasetti, 533 F.3d at 1039.

Here, the ALJ considered reports of Plaintiff engaging in
activities inconsistent with the purported severity of his
symptoms.

At the hearing, Plaintiff testified as having extreme
difficulties sitting, standing, and walking.  (Id. at p. 44).
Plaintiff testified he can no longer surf, do house or yard work,
or fish.  (Id. at pp. 45-46).  Plaintiff acknowledged that he can
drive, shop for groceries, do core exercises, and swim.  (Id.)

The ALJ found that the documentary record shows that
Plaintiff engaged in activities inconsistent with his claims of
extreme functional limitation.  The ALJ summarized the records
from the relevant time period that conflicted with Plaintiff's
account.  Treatment notes from April 2018 reflect that Plaintiff

22

went surfing.  (Id. at p. 352).  Treatment notes from April 2018 and July 2018 suggest that Plaintiff continued to go fishing. (Id. at pp. 233, 289).  Treatment notes from January 2020 show that Plaintiff reported that activities such as fishing and hiking aggravated his lower back pain.  (Id. at p. 668).

Activities such as surfing, fishing, and hiking are clearly incompatible with Plaintiff's allegations of extreme functional limitation.  Lewis v. Colvin, 2015 WL 4507172, at *5 (C.D. Cal. July 23, 2015) (finding that hiking was inconsistent with symptom testimony); Della v. Berryhill, 2018 WL 1185233, at *6 (S.D. Cal. Mar. 7, 2018) (finding that participation in surfing clinic was inconsistent with symptom testimony), report and recommendation adopted, 2018 WL 4627618 (S.D. Cal. Sept. 27, 2018); Meza v. Kijakazi, 2021 WL 6000026, at *7 (E.D. Cal. Dec. 20, 2021) (finding that fishing was inconsistent with symptom testimony).

Such activities were properly considered by the ALJ in his decision to discredit Plaintiff's testimony about the extent of his functional limitation.  Burch, 400 F.3d at 680-81.  Although the evidence of Plaintiff's daily activities may be open to other interpretations, "the ALJ's interpretation was rational" and must be held "where the evidence is susceptible to more than one rational interpretation."  Id. (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).

Plaintiff also argues that the ALJ committed legal error by

failing to show how Plaintiff's daily activities conflict with his symptom testimony.  (Pl.'s Mot. at 17-18, ECF No. 13).  The inconsistency between Plaintiff's documented daily activities and his alleged extreme limitations is readily discernible. Plaintiff alleged that he cannot remain on his feet for more than approximately fifteen minutes.  Evidence that Plaintiff engaged in activities such as hiking, particularly as recently as 2020, is clearly inconsistent with his allegations of extreme limitation.  The ALJ did not err in his analysis of Plaintiff's daily activities.

## CONCLUSION

The Social Security Administration Commissioner's decision is **AFFIRMED.**

The Clerk of Court is Ordered to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: May 31, 2022, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Christopher M. Gerken v. Kilolo Kijakazi, 21-cv-00082 HG-WRP,
**ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER**   24